## Seaf Jackson v. The State.

*No. 3234. Decided October 23.*

1. **Murder—Charge of the Court.**—The evidence on a trial for murder demanded, :and the trial court gave in charge to the jury, an instruction as to the law governing where the fatal difficulty was provoked by the defendant. The objection urged to the .said charge was that it was made unnecessarily prominent by underscoring .certain words, an objection that is held to be hypercritical, in view of the manifest purpose of ·the underscoring to attract the attention of the jury to the *intent* with which defend-.ant provoked the difficulty, if he did provoke it. Moreover, it was favorable rather than prejudicial to the defendant.

2. **Same.**—But note that the evidence demanded a further instruction embodying ·the law applicable where the defendant having provoked, in good faith abandoned the ·difficulty. Refusal of a special instruction applicable to the proof was error.

3. **Same—Evidence.**—In view of the proof adduced on the trial, the court erred ·in rejecting evidence to the effect that a few days prior to the homicide the deceased ·made an unprovoked, violent attack upon him with a knife, and attempted to take his ·life.

Appeal from the District Court of Freestone. Tried below before Hon. Rufus Hardy.

The indictment charged the murder of Sam. Dean. The conviction ·was for manslaughter, the penalty assessed being a term of two years in ·the penitentiary.

The fatal difficulty occurred during the progress of an entertainment at the house of John Brown, in Freestone County. Brown testified that early in the night the defendant told him that Sam. Dean, the deceased, had been reporting throughout the neighborhood that he, defendant, had been guilty of incest with his daughter and had put her in "the family way." He said to witness, "If Sam. Dean says that to me he will have me to kill." Witness asked him to have no difficulty at the house. He promised that he would not, and went out of the house. Witness soon afterwards observed that the deceased had left the house. He was unable to say whether the defendant or the deceased left the house first. Presently the witness heard the defendant say, "I believe, by God, you said it!" Witness joined the parties in the yard about the time deceased replied. His reply was, "If you think I said it I will prove it." Witness appealed to the parties not to engage in a fight in the yard. Quiet was restored for awhile, but about thirty minutes later the quarrel was renewed in the yard. Witness then heard defendant propose to deceased to go with him to the house of Mr. Piercy, a neighbor, by whom he said he would prove the circulation of the scandalous report by the deceased. Deceased at first agreed and then refused to go, upon the plea that it was late and Mr. Piercy had retired. About this time Milly Dean, the wife of the deceased, appeared on the scene. Defendant asked her, "What have you got to do with it, you d—d bitch?" He then seized the deceased by the left hand and attempted to draw him out of the yard, insisting that he should "come, let's settle it." Deceased pulled loose and then took a step or two towards defendant, and striking over his wife's shoulder, struck defendant about the head with a steelyard pea to which a leathern strap was attached. The two men then clinched and struggled until deceased exclaimed, "I am done with it." They then separated, and witness discovered that deceased had been cut in the bowels. Witness did not know which of the men provoked the difficulties.

On his cross-examination the witness said that the parties had two quarrels, the first beginning, so far as the witness knew, when he heard the defendant exclaim, "I believe, by God, that you said it." The second occurred about thirty minutes later, and the difficulty which ensued resulted fatally to deceased. Defendant pulled off his coat during the row, but at no time invited the deceased out of the yard to fight him. He made no positive threat to kill or injure deceased, but a half-hour before the first quarrel said, "If he tells me that, he will have me to kill." Witness did not repeat that statement to deceased. Just before deceased struck the defendant with the pea, the witness heard a woman named George Ann ask defendant to get on his horse and go home, to which request defendant replied that he would do so.

Albert Anderson testified for the State substantially as did the witness Brown, and in addition that when Milly Dean, the wife of deceased,

joined the parties at the gate, she told deceased to step through the gate and let defendant strike if he wanted to. It was then that defendant asked Milly what she had to do with the quarrel, and called her a d—d bitch, and it was then that deceased stepped forward and struck defendant with the slung shot. This witness stated that he did not see defendant seize the deceased's hand.

Milly Dean's account of the fatal difficulty was substantially the same as that of the preceding witnesses, except that, according to her statement, defendant's invitation to deceased to go out of the yard was to "settle the difficulty." She corroborated Brown's statement that defendant seized deceased's hand and dragged or led him towards the gate. The State closed.

E. Yarbrough testified for the defense that at the emancipation picnic, about a month before the homicide, he heard the deceased say that he intended to slung-shot the defendant all over the picnic grounds. He reported that threat to the defendant.

There was no material variance between the narratives of the eye-witnesses who testified for the defense, and they may be summarized as follows: When the witnesses reached the parties just before the fatal collision, the quarrel was in progress. Deceased insisted that defendant should go with him at once to Piercy's house. Defendant declined upon the ground that it was too late to disturb Piercy, but agreed to go on the next morning. Deceased replied that the matter must be settled that night, at the same time, according to one of the witnesses, holding his arms behind him, and arranging the slung shot in his right hand. Defendant replied that he did not propose to have a difficulty that night. Deceased replied that he would have to have it. John Brown then appeared and told the parties to have no difficulty in his yard. Defendant replied that he did not intend to engage in a difficulty. Deceased replied again that he would have to engage in it. Defendant thereupon replied that if nothing but a fight would do the deceased, he would fight deceased outside of the yard. The parties then started towards the gate, defendant walking some feet in advance of deceased. He passed through the gate and took off his coat. Deceased stopped at the gate, where he was joined by his wife, who proceeded to curse defendant. About that time George Ann appealed to defendant to leave, and he replied that he would do so. Then deceased's wife told deceased to step outside the yard and let defendant strike him. Defendant said something in reply to deceased's wife, when deceased stepped forward, and from behind his wife struck defendant over the head with the pea. In the scuffle that ensued deceased was cut in the abdomen. He died next day.

Several witnesses for the defense testified that, by general reputation in the neighborhood, the deceased was a violent, quarrelsome, and dangerous man. One witness testified that some time prior to the homicide

she heard the deceased threaten to kill the defendant, which threat she communicated to defendant.

*J. D. Childs*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WILLSON, JUDGE.—We are unable to perceive the soundness of the objections urged by counsel for the defendant to the charge of the court. Instructions as to the law governing where a difficulty has been provoked by the defendant were demanded by the evidence. Upon this phase of the case the law is correctly expressed in the charge of the court without unnecessary repetition and without giving to it undue prominence. That certain words in the charge were underscored is an objection which seems to us to be hypercritical and without merit. The purpose of the underscoring is manifest, and could not have been misconstrued by the jury. That purpose was to attract the attention of the jury to the *intent* with which the defendant provoked the difficulty, if he did provoke it, and the law as controlled by such intent. It was favorable to the defendant in this respect. In all respects we think the charge of the court as to the issues submitted by it is full, correct, and sufficient.

But we are of the opinion that the evidence required an instruction as to the law in case of an abandonment of the difficulty by the defendant. Such instruction was requested by counsel for defendant and was refused. In this refusal we think the court erred. There is evidence in the record tending to show that the defendant had in good faith abandoned the original difficulty, and the deceased and his wife, acting together, renewed, provoked, and forced the conflict which resulted fatally to the deceased.

Other errors are assigned and insisted upon by counsel for defendant, only one of which we shall discuss, as the remainder are of a character not likely to occur on another trial. Defendant offered to prove that a few days prior to the homicide the deceased had made an unprovoked, violent attack upon him with a knife, attempting to take his life. Upon objection made by the State the said proposed evidence was rejected upon the ground that it was irrelevant. We think the evidence should have been admitted. It was rendered pertinent and competent by other evidence adduced on the trial. It tended to support the theory of the defendant that the deceased was a violent and dangerous man, and provoked and pressed the difficulty which resulted in his death. It was admissible also upon the same ground of threats made by deceased, as tending to show that defendant in killing deceased acted in self-defense.

Because of the errors we have specified the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Hurt, J., absent.